IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | |
| *Plaintiff*, | |
| v. | Civil Action No. ELH-11-3344 |
| MARYLAND FOOD & ENTERTAINMENT, LLC, t/a BWX Lounge Courtside Sports Bar, t/a Courtside Sports Bar & Grille, *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OPINION

This Memorandum Opinion resolves the Motion to Dismiss (ECF 14) filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by defendants Maryland Food & Entertainment, LLC, trading as BWX Lounge Courtside Sports Bar as well as Courtside Sports Bar & Grille ("Maryland Food"); Jerry A. Dianis; Judith A. Brown, a/k/a Judith Brown-Dianis; and Lisa Haynes. J & J Sports Productions, Inc. ("J & J"), plaintiff, has filed an Opposition (ECF 15) to the Motion to Dismiss, and defendants have filed a Reply (ECF 16).

In addition, this opinion resolves the motion by defendants' counsel, B. Darren Burns, Esq., to withdraw from representation ("Motion to Withdraw") (ECF 19). No responses have been filed to that motion.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I will grant the Motion to Dismiss in part and deny it in part, and will grant the Motion to Withdraw.

- 1 -

**Background**

According to the complaint (ECF 1), J & J holds, by contract, the "exclusive nationwide television distribution rights" to a high-profile boxing match between Floyd Mayweather, Jr. and Juan Manuel Marquez ("the Program") that was telecast nationwide on Saturday, September 19, 2009.  *See* Complaint ¶ 9.  Maryland Food is a business entity trading as the Courtside Sports Bar & Grille in Hanover, Maryland.  *Id.* ¶ 6.  J & J alleges, upon information and belief, that Mr. Dianis, Ms. Brown, and Ms. Haynes are "principals and co-owners of the [liquor] license" for Maryland Food and that each is an "officer, director, shareholder, employee, agent, and/or other representative" of Maryland Food.  *Id.* ¶ 7.[1]  J & J also alleges, *id.* ¶ 12:

> With full knowledge that the Program was not to be intercepted, received or exhibited by entities unauthorized to do so, each and every [one] of the above named Defendants and/or their agents, servants, workmen or employees did unlawfully publish, divulge and exhibit the Program at the time of its transmission at the addresses of their respective establishments . . . .   Said unauthorized interception, publication, exhibition and divulgence by each of the Defendants were done willfully and for purposes of direct or indirect commercial advantage or private financial gain.

In addition to its Complaint, J & J has submitted an affidavit of an "investigator," Delanyo Appiah, who avers that he was present at the BWX Lounge Courtside Sports Bar between 11:55 p.m. and 12:06 a.m. on September 19-20, 2009, and he observed that the "Marquez & Mayweather Main Event Fight" was being shown on at least one television in the establishment.  *See* ECF 1-2.  However, the affidavit makes no mention of Mr. Dianis, Ms. Brown, or Ms. Haynes, and it contains no allegations with regard to them.

---

[1] J & J has attached to its Complaint (1) a copy of a webpage of the Maryland State Department of Assessments and Taxation, allegedly identifying Judith A. Brown as Maryland Food's resident agent; and (2) an alleged copy of Maryland Food's liquor license, which identifies Mr. Dianis, Ms. Brown, and Ms. Haynes as licensees.  *See* ECF 1-2.

On the strength of these factual allegations, J & J asserts three counts against defendants: violation of 47 U.S.C. § 605 (Count I);[2] violation of 47 U.S.C. § 553 (Count II);[3] and the common law tort of conversion (Count III).   Both of the statutes that defendants allegedly violated are provisions of the Federal Cable Communications Policy Act of 1984, Pub. L. 98-549, 98 Stat. 2780, which is sometimes called the "Cable Act."

**Discussion**

A.  Motion to Dismiss

*1.  Standard of Review*

Defendants' Motion to Dismiss seeks dismissal of plaintiff's complaint for failure to state a claim, under Fed. R. Civ. P. 12(b)(6).   When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"   *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).   The court may also properly consider documents "attached or incorporated into the complaint."   *Philips v. Pitt County Memorial Hosp.*, 572 F.3d

---

[2] Section 605(a) states, in relevant part: "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information contained therein) for his own benefit or for the benefit of another not entitled thereto."   Section 605(e)(3)(A) grants a private right of action to "any person aggrieved."   Section 605(d)(6) specifically defines the term "any person aggrieved" to include "any person with proprietary rights in the intercepted communication."

[3] Section 553(a)(1) states: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."   Under § 553(c)(1), "[a]ny person aggrieved by any violation of subsection (a)(1)" may bring a civil action.   Unlike § 605, § 553 does not contain a specific definition of "any person aggrieved."

176, 180 (4th Cir. 2009); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448. However, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1740 (2010). Moreover, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted).

Whether a complaint states a claim for relief is judged by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 n.3 (2007) (citation omitted). To be sure, the plaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2). *Id.* at 555. But, the rule demands more than bald accusations or mere speculation. *Id.* To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556. A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the Rule. *Id.* at 555.

Both *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see*

*Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *see Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).   If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'"   *Iqbal*, 556 U.S. at 679 (citation omitted).

## 2.  Mayreal

As the parties are aware, this Court recently issued an opinion in a very similar case brought by the same plaintiff against a different business establishment and two individuals who were associated with that business, regarding alleged unauthorized interception of the same Program.   *See J & J Sports Productions, Inc. v. MayrealII, LLC*, 849 F. Supp. 2d 586 (D. Md. 2012) ("*Mayreal*").   For purposes of the motions to dismiss at issue in *Mayreal*, I accepted, *arguendo*, the defendants' characterization of 47 U.S.C. § 605 as prohibiting "'thefts or interceptions of radio communications [including digital satellite television transmissions] regardless of whether or not the radio communication is sent out over a cable tv network,'" and 47 U.S.C. § 553 as prohibiting "'communication thefts or interceptions from a cable network regardless of whether or not the communication originated as a radio broadcast,'" while noting that there is "some dispute in the federal courts as to what particular activities are prohibited under each section and the degree of overlap between them."   *Mayreal*, 849 F. Supp. 2d at 588 & n.4 (quoting defendants' brief) (citing cases).

I rejected the defendants' argument that J & J's Cable Act claims should be dismissed because they were inconsistent with each other, reasoning that Fed. R. Civ. P. 8(d)(3) allows a

plaintiff to plead in the alternative, regardless of consistency. Thus, the alleged inconsistency between the Cable Act counts was not fatal at the pleading stage, although I observed that J & J might ultimately be forced to choose which theory of liability it would pursue. *See Mayreal*, 849 F. Supp. 2d at 588-89.

In addition, I rejected the defendants' claim that the Cable Act counts were defective for failing to allege explicitly the means by which the Program was intercepted. J & J had averred "that the Program was unlawfully intercepted and displayed by Mayreal at its establishment, without authorization from plaintiff, on a particular date and at a particular time." *Id*. at 594. I held that, given defendants' construction of § 605 and § 553 as prohibiting interception of transmissions sent via radio and cable, respectively, "to the extent that a method of interception must be alleged under plaintiff's Cable Act causes of action, plaintiff has done so by pleading violations of § 605 and § 553 in the alternative." *Id.*

However, I dismissed J & J's claims against the individual defendants for failure to state a claim. Notably, the allegations as to the individual defendants in this case are virtually identical to the allegations against the individual defendants in *Mayreal*.[4] As in this case, the individual defendants in *Mayreal* were the resident agent and the liquor licensees of the defendant business entity. *See id.* at 587 & n.2. Although I acknowledged that "there is a division of authority" among federal district courts considering the sufficiency of allegations of individual liability for Cable Act violations, I found persuasive a line of authority represented by *J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469 (E.D.N.Y. 2009)

---

[4] As I observed in *Mayreal*, the "case law makes quite evident that J & J has been a frequent litigant under the Cable Act in recent years," 849 F. Supp. 2d at 590 n.6, and plaintiff apparently utilizes a form complaint.

("*291 Bar*"), holding inadequate under the *Iqbal/Twombly* pleading standard the type of

generalized allegations of individual liability advanced by J & J, which are based essentially on

an individual's status as a resident agent, liquor licensee, shareholder, or officer of a defendant

business entity, coupled with bald assertions of liability that are framed on information and belief

and in the alternative, and simply track the language of the statutes.  *See Mayreal*, 849 F. Supp.

2d at 589-91 (citing case law).  I explained, *id.* at 591-92:

> Here, as in *Iqbal*, plaintiff's allegations as to individual liability amount to
> mere "labels and conclusions."  Plaintiff alleges, without distinguishing between
> the individual defendants and Mayreal, that "[d]efendants and/or their agents,
> servants, workmen or employees did unlawfully publish, divulge and exhibit the
> Program," and that the violation "by each of the Defendants [was] done willfully
> and for purposes of direct or indirect commercial advantage or private financial
> gain."  But, this is a mere "formulaic recitation of the elements of [the] cause of
> action."  *Twombly*, 550 U.S. at 555.  Plaintiff alleges no facts to show that [the
> individual defendants] had personal knowledge of, or the ability to supervise and
> control, the alleged unlawful interception of the Program.  For instance, there is
> no allegation that the individual defendants were present at the nightclub when the
> Program was shown, that they personally authorized the interception and display
> of the Program, or that they authorized advertisements for the display of the
> Program or the imposition of a cover charge to profit from the display.

Accordingly, I dismissed, without prejudice, the claims against the individual defendants,

but granted J & J leave to file an amended complaint against them that would adequately allege a

factual basis for their individual liability.  *See id.* at 593.

### 3. Individual Liability

Relying on the ruling in *Mayreal*, as well as the decision in *291 Bar* and other cases

reviewed in *Mayreal*, defendants urge the dismissal of the Cable Act claims against the

individual defendants.  Moreover, they seek dismissal of the conversion claim against them in

light of well established Maryland law regarding the requirement to show fraud or "paramount

necessity" in order to pierce the "corporate veil" and hold individual officers, directors, or

shareholders of a corporation or limited liability company liable for the acts of the business entity. *See, e.g., Stein v. Smith*, 358 Md. 670, 682, 751 A.2d 504, 510 (2000); *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 312, 340 A.2d 225, 240 (1975); *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 552-55 (D. Md. 2011). [5]

J & J acknowledges that "this Court is unlikely to alter its general analysis at this juncture," but urges the Court, nevertheless, to "take heed of the liquor license herein and deny the individual Defendants' motion to dismiss." Opposition at 10. J & J relies on *J & J Sports Productions, Inc. v. L & J Group, LLC*, Civ. No. RWT-09-3118, 2010 WL 816719 (D. Md. Mar. 4, 2010), a case that I found unpersuasive in *Mayreal*. J & J argues that, where the individual defendants appear on the liquor license for Maryland Food, there is a "reasonable inference that Defendants are the only persons with 'a right and ability to supervise' the violations and they are the only individuals with *any* financial interest in the activities of the establishment." Opposition at 12 (emphasis in original).

To be sure, as I recognized in *Mayreal*, some courts would hold the allegations of individual liability here sufficient to state a claim. *See, e.g., J & J Sports Productions, Inc. v. Q Cafe, Inc.*, 2012 WL 215282, at *4 (N.D. Tex. Jan. 25, 2012) (holding defendant individually liable solely "due to her ownership of the Establishment's alcohol license"). However, J & J has not presented any argument that convinces me that I erred in regard to my determination in

---

[5] Under Maryland law, an individual member of a limited liability company "may be liable . . . 'for torts [he or she] personally commit[s], or which [he or she] inspire[s] or participate[s] in, even though performed in the name of an artificial body.'" *Allen v. Dackman*, 413 Md. 132, 153, 991 A.2d 1216, 1228 (2010). However, a member of a limited liability company is not liable merely because of his or her membership in the business entity. Although I agree with the individual defendants that the complaint fails to allege their individual liability for conversion, I need not devote extensive analysis to that point, because plaintiff's conversion claim is defective as to all defendants for other reasons, explained *infra*.

*Mayreal* to reject those authorities.

J & J relies, *inter alia*, on the listing of the individual defendants on Maryland Food's liquor license.  Regardless of what implications for individual liability a liquor license may have in other jurisdictions, individual licensees on Maryland liquor licenses only "assume all responsibilities as individuals, and are subject to all of the penalties, conditions and restrictions imposed upon licensees *under the provisions of the Tax - General Article that relate to the alcoholic beverage tax and the provisions of this article* [*i.e.*, Article 2B of the Maryland Code, which contains Maryland's statutory regulations of sales of alcoholic beverages]."  Md. Ann. Code of 1957 (2011 Repl. Vol.), Art. 2B, § 9-101(a) (emphasis added).  In other words, Maryland liquor licensure law imposes individual liability on licensees for obligations that are imposed under particular state statutes relating to alcoholic beverages.  *See Rosedale Plaza Ltd. P'ship v. Lefta, Inc.*, 140 Md. App. 243, 252, 780 A.2d 387, 393 (2001) ("The requirement that licenses be issued to individuals is to insure that there are individuals responsible and subject to the penalties, conditions and restrictions imposed upon licensees pursuant to § 9-101 and the applicable tax requirements.").  It does not create a free-standing exception to the "corporate veil" doctrine for individual liquor licensees as to liability for any and all legal breaches allegedly committed by the licensed business entity.[6]

---

[6] J & J is also incorrect that the listing of the three individual defendants on the liquor license creates a presumption that the individual defendants have financial interests in Maryland Food or are the only persons who have such interests.  In the case of a liquor license for a limited liability company, Maryland law requires that "the license shall be applied for by and be issued to 3 of the authorized persons of that limited liability company."  Md. Ann. Code of 1957, Art. 2B, § 9-101(c)(1).  To be a licensee of a limited liability company, an individual must merely be "authorized to act for" the company, not necessarily a member of the company.  *Id.* § 9-101(a).

In sum, in accord with my earlier decision in *Mayreal*, I agree with defendants that the complaint fails to state a claim upon which relief can be granted against any of the individual defendants. Therefore, J & J's Cable Act claims against the individual defendants will be dismissed, without prejudice. As in *Mayreal*, I will grant plaintiff leave to file an amended complaint.

*4. Cable Act Liability*

Defendants maintain that plaintiff's Cable Act claims against all defendants are fatally defective. As to § 605, which addresses unauthorized receipt of radio communications, including digital satellite television signals, defendants argue that "'[e]xhibition' does not equate to pre-transmission interception," and that "the most the Court might infer from the affidavit attached to J & J's complaint is that Defendants showed the Program on Courtside's televisions, which clearly would have had to be after the Program was transmitted to the restaurant." Motion to Dismiss at 4. As to § 553, which prohibits unauthorized interception or receipt of A communications service transmitted over a cable system, defendants argue that neither the complaint nor plaintiff's investigator's affidavit contain an allegation that defendants "received or intercepted a coaxial cable or other wire transmission." Motion to Dismiss at 5. Defendants posit: "Perhaps J & J wants the Court to assume that Defendants somehow rigged their television wiring or other equipment to intercept a cable transmission, but there are no factual allegations to this effect in either the Complaint or the attached exhibits." *Id.* at 5-6.

Defendants rely on the recent decision of Judge William M. Nickerson in *Joe Hand Promotions, Inc. v. Dock Street Enterprises, Inc.*, Civ. No. WMN-11-1973, 2011 WL 6141058 (D. Md. Dec. 8, 2011), in which the court adopted "the Seventh Circuit's view that § 605 applies

to the interception of cable signals 'before they begin to travel through the cable,' while Section 553 applies to transmissions 'at the point in the system that the transmission is carried by coaxial cable or wires.'" *Id.* at *4 (citation omitted). Judge Nickerson granted summary judgment to the defendants in *Dock Street* as to a § 605 claim (but not as to a § 553 claim) where unrebutted affidavit evidence established that defendant "received the Program through the cable service provided by Comcast," *id.* at *4 n.3,[7] thereby falling outside the purview of § 605.

Plaintiff correctly points out that *Dock Street* was a ruling on a motion for summary judgment, at which point the court had before it undisputed evidence specifying the method by which the program at issue was transmitted and received. This case is at the pleading stage; no such evidence is contained in the record, nor need it be presented before discovery has commenced. I adhere to my earlier ruling in *Mayreal* that, assuming sections 553 and 605 reach entirely different conduct, plaintiff's allegations are sufficient to state claims under each statute, in the alternative, against the business establishment where plaintiff's Program was exhibited without authorization. The issues as to whether the Program was received via satellite or cable, and whether defendants were, in fact, authorized to receive the Program (albeit not by plaintiff),

---

[7] A defendant is not liable under § 553 if the defendant was "specifically authorized . . . by a cable operator" to receive the transmission at issue. Courts, including the *Dock Street* Court, have recognized that whether a defendant was authorized by its cable provider to receive a program will depend, in part, on the terms of service agreed to between the defendant and the cable provider. *See, e.g.*, *Dock Street*, 2011 WL 6141058, at *5 n.4 (noting that the Comcast terms of service in that case included a disclaimer requiring the customer to receive authorization from "'the applicable program or event distributor'"); *see also Joe Hand Promotions, Inc. v. Phoenix Promotions LLC*, No. 10-15102, 2012 WL 3025107, at *2-3 (E.D. Mich. July 24, 2012) ("The Comcast terms and conditions require that Defendants obtain authorization in writing before exhibiting the Program. This is in contrast to the facts of [*J & J Productions, Inc. v.*] *Schmalz*, [745 F. Supp. 2d 844 (S.D. Ohio 2010)] where it was the cable operator's contractual responsibility to inform the defendant that it was not authorized to provide it with certain programming."). In this case, defendants' terms of service with their cable or satellite television provider, if any, are not now before the Court.

must be explored through discovery.  Neither of the Cable Act counts will be dismissed as to Maryland Food.

### 5. Conversion

Under Maryland law,[8] "[c]onversion is an intentional tort, consisting of two elements, a physical act combined with a certain state of mind."  *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 261, 841 A.2d 828, 835 (2004).  "The physical act can be summarized as 'any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it.'"  *Id.* (citations omitted).  The requisite intent is "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights."  *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 414, 494 A.2d 200, 208 (1985).  "The defendant may have the requisite intent even though he or she acted in good faith and lacked any consciousness of wrongdoing, as long as there was an intent to exert control over the property."  *Darcars*, 379 Md. at 262, 841 A.2d at 836.

The parties in *Mayreal* did not specifically address the viability of plaintiff's conversion claim under Maryland tort law.  However, I observed, in a footnote, that "other courts have dismissed state law conversion claims in Cable Act cases where the underlying state law did not recognize the tort of conversion with respect to intangible property."  *Mayreal*, 849 F. Supp. 2d

---

[8] "When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011) (citing, *inter alia*, *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983), *cert. denied*, 469 U.S. 1215 (1985)). Maryland is, of course, the forum state of this Court. Under Maryland's choice-of-law principles, tort claims are governed by the law of the state where the alleged harm occurred ("*lex loci delicto*"). *See, e.g.*, *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010).  The complaint's allegations make plain that the site of the alleged tort was defendants' business establishment in Maryland, and so Maryland law applies to plaintiff's tort claim.

at 594 n.9 (citing *Joe Hand Promotions, Inc. v. Lynch*, 822 F.Supp.2d 803, 806-09, 2011 WL

5386358, at *3-5 (N.D. Ill. Nov. 7, 2011)  (dismissing common law conversion claim under

Illinois law in Cable Act case, because "Illinois courts have not yet extended the tort of

conversion to intangible property like television programming")).  "To the extent that a similar

analysis is applicable here," I reasoned that "it appears to be debatable, at best, whether

Maryland courts would recognize a conversion claim for intangible property such as the

Program." *Mayreal*, 849 F. Supp. 2d at 594 n.9.

For this proposition, I cited *Allied Investment Corp. v. Jasen*, 354 Md. 547, 731 A.2d 957

(1999), and *Brass Metal Products, Inc. v. E-J Enterprises, Inc.*, 189 Md. App. 310, 984 A.2d 361

(2009), in which the Maryland appellate courts have recognized that "the tort of conversion

generally may extend to the type of intangible property rights that are merged or incorporated

into a transferable document," but have rejected conversion claims as to "completely intangible

rights," or "situations in which the relevant [tangible] document itself has not been transferred."

*Allied Inv.*, 354 Md. at 562, 731 A.2d at 965.  Thus, in *Allied Investment*, the Maryland Court of

Appeals held that the conversion tort could not apply to a partnership interest, although it could

apply to stock certificates, which are tangible, physical manifestations of corporate shares.  *See*

*id.* at 562-64, 731 A.2d at 965-66.  In *Brass Metal*, the Maryland Court of Special Appeals,

applying *Allied Investment*, held that the conversion tort did not apply to so-called "die rights" in

the shapes and designs of aluminum railings.  *See Brass Metal*, 189 Md. App. at 339-40, 984

A.2d at 378-79.

Defendants argue that, pursuant to *Allied Investment* and *Brass Metal*, plaintiff's

conversion claim is not viable under Maryland law.  In response, J & J argues that "Maryland

has not yet ruled on whether the type of broadcast signal at issue herein gives rise to a conversion cause of action," and that, because "the law in Maryland is not conclusive, Plaintiff's claim should survive 12(b)(6) analysis." Opposition at 13. Plaintiffs note that there is "conflicting authority on this issue nationwide." *Id.* In addition to the *Lynch* case, which I cited in *Mayreal* and in which a conversion claim as to television programming was rejected under Illinois law, J & J cites two federal cases from California in which conversion as to television programming was found viable, and one federal case from Pennsylvania in which such a conversion claim was held not viable. *Compare DirecTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005), *and Don King Prods. v. Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995), *with DirecTV, Inc. v. Kitzmiller*, Civ. No. 08-3296, 2004 WL 692230, at *5 (E.D. Pa. Mar. 31, 2004).

The conflict among the federal cases simply tracks differences among the applicable state laws. As the state court decisions relied upon by the above-cited cases reveal, California recognizes the conversion tort as to wholly intangible intellectual property, while Illinois and Pennsylvania, like Maryland, do not. As Judge Nickerson recently ruled in another case brought by plaintiff, *J & J Sports Productions, Inc. v. Tag Galleries, LLC*, Civ. No. WMN-11-3333, 2012 WL 2577632, at *3 (D. Md. July 3, 2012), "Maryland clearly requires the intangible property right allegedly converted to have been merged into a transferable document. Plaintiff offers no such document. Accordingly, Plaintiff's conversion claim will be dismissed." The same result obtains here.

### B. Motion to Withdraw

B. Darren Burns, Esq., counsel for defendants, filed the Motion to Withdraw on September 3, 2012, after briefing of the Motion to Dismiss had been completed. In the Motion

to Withdraw, Mr. Burns certified his compliance with the requirements of notice to his clients of his intent to withdraw established by Local Rule 101.2.  Mr. Burns stated that "it has become apparent that Defendants no longer desire to be represented by undersigned counsel in this action," and represented that defendants had acknowledged their receipt of his notice of his intent to withdraw from representation.  Motion to Withdraw at 2.

In an Order issued September 4, 2012 (ECF 20), I directed the parties' attention to the provisions of Local Rule 101.2(b) governing withdrawal of counsel representing a party that is not an individual, such as Maryland Food.  The rule provides:

> In the event that within thirty (30) days of the filing of the motion to withdraw, new counsel has not entered an appearance, the Court may take such action, if any, that it deems appropriate, including granting the motion to withdraw and dismissing any affirmative claim for relief asserted by the party and/or directing the party to show cause why a default should not be entered on claims asserted against it.

I observed that, in my view, the rule establishes a thirty-day "safe harbor" period following the filing of a motion to withdraw, during which a corporate party may obtain new counsel.  The 30-day period does not apply to motions to withdraw from representation of individual defendants because individuals, unlike corporate entities, are eligible to represent themselves.  Nevertheless, in this case, I determined that it would be "counterproductive" to excuse Mr. Burns from representing the individual defendants while he was still required to represent Maryland Food.  Accordingly, I advised counsel that I would wait at least thirty days before ruling on the Motion to Withdraw as to all defendants.

More than thirty days have elapsed since the Motion to Withdraw was filed.  No opposition has been filed, nor has other counsel entered an appearance on behalf of defendants.

There does not appear to be any basis to deny the Motion to Withdraw and, accordingly, it will be granted.

Notably, unless an amended complaint is filed, Maryland Food will be the sole remaining defendant and it is not eligible to represent itself or be represented by its non-attorney members. It "has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201 (1993). *See also* Local Rule 101.1(a) ("All parties other than individuals must be represented by counsel.").

Accordingly, in the Order that follows, implementing my rulings, I will ask plaintiff to submit a status report as to its intentions for prosecution of the case going forward.

## Conclusion

For the foregoing reasons, Count III of plaintiff's complaint, alleging conversion, will be dismissed, with prejudice, as to all defendants. In addition, Counts I and II, alleging violations of different provisions of the Cable Act, will be dismissed, without prejudice, as to the individual defendants. In all other respects, defendants' Motion to Dismiss will be denied. Defendants' counsel's Motion to Withdraw will be granted. An appropriate Order follows.

Date:   October 24, 2012                      _____/s/_____
                                              Ellen Lipton Hollander
                                              United States District Judge